[This opinion has been published in *Ohio Official Reports* at 84 Ohio St.3d 1203.]

CINCINNATI BAR ASSOCIATION *v.* ALLEN.*

[Cite as *Cincinnati Bar Assn. v. Allen*, 1998-Ohio-511.]

*Attorneys at law—Complaint of misconduct previously dismissed—Motion for reconsideration denied.*

(No. 97-2675—Submitted September 15, 1998—Decided November 25, 1998.)

On Motion for Reconsideration.

—————————————

*Peter W. Swenty, Thomas R. Smith* and *Edwin W. Patterson III*, General Counsel, for relator.

*Doris Houser Allen, pro se.*

—————————————

{¶ 1} The motion for reconsideration is denied.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, F.E. SWEENEY and LUNDBERG STRATTON, JJ., concur separately.

—————————————

**LUNDBERG STRATTON, J., concurring.**

{¶ 2} In light of the dissent filed with the original dismissal, I write to explain why I vote not to grant reconsideration. The standard to prove a disciplinary complaint is "clear and convincing evidence." Gov.Bar R. V(6)(J). In short, I felt that the complaint was not proven by clear and convincing evidence.

{¶ 3} This is a case about credibility and there are serious credibility issues. I have reviewed the record several times and have found the testimony of the complaining witness, Sylvia Huff, her mother, Doris Huff, and another witness, Lisa Fairall, to be full of internal inconsistencies and outright contradictions. Their present versions are not credible in light of the history of the case. In addition,

Sylvia Huff had ample reason to blame Allen so that Sylvia Huff could escape charges of perjury and falsification for filing a false affidavit.

**{¶ 4}** The affidavit that is at the heart of this case, in its totality, states:

"[D]efendant, recently released from penitentiary on charge of felonious assault with gun spec. appeared twice on 3-25 and 3-26 at Roberts Paideia Academy and threatened me and my three small children[.] [D]efendant is armed and dangerous. I fear for my childrens [*sic* ] safety[.] [T]hey are afraid to attend school."

**{¶ 5}** Allen's version is that Sylvia Huff retained her to deal with an immediate crisis. Sylvia Huff testified that Dwayne Harris was the father of three of her children, had at one time lived with her, and had been physically abusive toward her. She had, in fact, filed domestic violence charges against him in 1991, and in 1997 even went on television to discuss the impact of the domestic violence on her children. Sylvia Huff also testified that Dwayne Harris had kidnapped her children once and that the children feared him. She further testified that she was still afraid of him and that she had moved several times to avoid him.

**{¶ 6}** Dwayne Harris was incarcerated for felonious assault with a gun specification. In March 1996, soon after his release, he appeared at her children's school with a "group of friends" and asked to remove the children (not just to present a birthday gift as stated in the dissent from the dismissal).

**{¶ 7}** At this point, the testimony of the witnesses begins to vary widely. Allen testified that at their first meeting, Sylvia Huff was "panic-stricken," "terrified," and fearful that Dwayne Harris would kidnap her kids again. Yet from reading the testimony of her mother, Doris Huff, one would infer that the same meeting was a casual visit to the lawyer to "establish paternity so the parents can have visiting rights, all that." Doris Huff claimed that she never knew about the prior kidnapping. She even denied that her daughter was fearful when seeking Allen's services and only "expressed her concern about her not being the legal

guardian." Yet she conceded knowing that her daughter had just filed another domestic violence charge against Dwayne Harris.

{¶ 8} Lisa Fairall, a friend who accompanied the group (mother, daughter, children) to Allen's office, and who was not present for most of the exchange with Allen, was aware of the children's fear and testified that Dwayne Harris went to the school twice, on March 25 and 26. (Sylvia Huff claimed one visit, with the other contact being a phone call to the school, while Doris Huff testified as to two visits also.)

{¶ 9} Sylvia Huff's testimony varies widely as well. She denied seeing Dwayne Harris except for the court hearing upon his arrest, yet stated that he visited her relatives and visited her home when she was gone, forcing her to move several times since his release from prison. She admitted that she had just filed a new domestic violence charge "when he assaulted me the earlier part of this year." She denied the contents of the affidavit at Dwayne Harris's hearing before Judge Schweikert. Yet when closely examined by a panel member, she admitted that she thought when she signed the affidavit that *everything* in it was true except that Dwayne Harris appeared only once and that she did not believe that he was armed at that time, although she did consider him dangerous. She promptly changed her version again upon redirect by the prosecutor.

{¶ 10} But both Doris Huff and Sylvia Huff admitted that after Dwayne Harris was arrested, they were warned by a prosecutor that Sylvia Huff, if she were then to deny the contents of her affidavit, faced perjury and falsification charges. Their defense? Our lawyer made us do it.

{¶ 11} Allen's conduct is not blameless. She admits listing on the affidavit the two dates of Dwayne Harris's visits to the school as the dates of the threats. But threats certainly could be implied by Dwayne Harris's presence at the school soon after release from prison, the presence of "his group of friends," his request to remove the children from the school, and his history of kidnapping. Although the

dissent characterized Allen as admitting that she falsified the affidavit, a closer reading of the transcript *in context* reveals only that she admitted to implying specific threats on specific dates because the court required specific dates to issue the complaint. Allen strongly denies any fraudulent activity. She explained at her hearing:

"Ms. Allen: Well, no. I take issue with the remarks that I encouraged my client to lie. She didn't lie. She was threatened. She felt threatened. She insisted she felt threatened, that her children were in danger of being kidnapped. I don't feel that that was a lie qua lie, but in order to get the complaint on, you had to be specific.

"But she was quite clear that she felt threatened. I wouldn't have been down there asking the police for protection if I didn't think she was entitled to protection. And so a lie, no.

"I tried to put it in a way so that, you know, it stated the essential nature of the facts while it also comports with what was necessary in order to get a TPO issued."

{¶ 12} It was wrong to be more specific than the facts warranted to achieve a goal, and we do not dispute that Allen should not have taken that step. However, we can also understand the implied threat posed by Dwayne Harris's one or two visits to the school on March 25 and 26. But to accept the remainder of the dissent's argument requires belief in Sylvia and Doris Huff's current versions and I did not find those versions to be credible. I believed Allen's version that Sylvia Huff was terrified and requested Allen's help. I believe that Sylvia Huff's ex-boyfriend, who had just been released after four years in prison for felonious assault with a gun, appeared at the school *with friends* on March 25 to remove the children and not just to leave a birthday gift, and possibly again on March 26. Sylvia Huff had previously been terrorized and abused by Dwayne Harris; he had kidnapped her children; she was in great fear of him.

**{¶ 13}** But at the time of Dwayne Harris's hearing before Judge Schweikert, Sylvia Huff did not wish to pursue the criminal complaint. How many of us lawyers and judges have experienced recanted accusations in domestic violence cases? It is a common occurrence, not the exception. So Sylvia Huff claimed that she had falsified the affidavit, but upon learning that her actions would open her to perjury and falsification charges, she blamed it all on Allen. Allen's mistake was in writing the two dates of Dwayne Harris's school visits on the affidavit, without explaining that the visits posed only implied threats and that the allegation that Dwayne Harris was armed was based only on his previous use of a gun.

**{¶ 14}** I believed Allen, and although I do not find her blameless, I do not find the case proven by clear and convincing evidence, and that is the standard of proof required by the Code of Professional Responsibility. Therefore, I find no reason to reconsider our decision.

DOUGLAS and F.E. SWEENEY, JJ., concur in the foregoing concurring opinion.

_____